In re DUNCAN/WALKER CHILDREN.

[Cite as *In re Duncan/Walker Children* (1996), 109 Ohio App.3d 841.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 1995CA00218.

Decided March 18, 1996.

*Paula M. Sawyers,* for appellant, Stark County Department of Human Services.

*Aram Ohanian,* for appellee.

*Darlene Odar,* guardian *ad litem.*

---

READER, Judge.

Our investigation indicates that this is the third time that this family's problems have come before this court by way of appeal. This case was initiated by the filing of a complaint for permanent custody on February 7, 1994, by the Stark County Department of Human Services. The adjudicatory trial resulted in the trial court's overruling the motion for the termination of parental rights and granting long-term foster care of the children. The department filed its appeal to this decision, and on April 10, 1995, we reversed and remanded the case for the trial court to enter findings of fact and conclusions of law.

On May 2, 1995, a hearing was held, at which time all parties were ordered to submit proposed findings of fact and conclusions of law. The mother and guardian *ad litem* submitted together proposed findings of fact and conclusions of law, and subsequently the father submitted proposed findings and incorporated those of the mother and the guardian *ad litem.*

The trial court adopted both proposed findings of fact and conclusions of law on May 30, 1995, from which the department filed its appeal, citing three assignments of error:

### Assignments of Error

"I. The denial of the Stark County Department of Human Service's complaint for permanent custody and granting of long-term foster care was against the manifest weight of the evidence.

"II. The trial court erred as a matter of law under Ohio Revised Code Section 2151.353(B) in granting long-term foster care to the Stark County Department of Human Services when the Stark County Department of Human Services did not pray for long-term foster care in its complaint.

"III. The trial court erred as a matter of law under Ohio Revised Code Section 2151.353 and 2151.415 in granting long-term foster when none of the legal requirements for long-term foster care were met."

We shall speak to the assignments out of order. We find that Assignment of Error II has no merit whatsoever. This court, in a previous appeal, determined that the trial court is vested with the inherent right to provide for less restrictive relief than is prayed for in a juvenile complaint. We find this discretionary power to be contained in R.C. 2151.353(A), which states:

"If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

"* * *

"(5) Place the child in long-term family foster care * * *."

See *In re Stoffer* (Feb. 6, 1995), Stark App. No. 94–CA–0153, unreported, 1995 WL 347906. Therefore, we overrule Assignment of Error II.

We shall now speak to Assignments of Error I and III together, since they relate to issues of manifest weight of the evidence.

Subsequent to our order of reversal and remand to the trial court for findings of fact and conclusions of law on April 10, 1995, the trial court held a status hearing. We have reviewed the transcript of that hearing, and we find that there is confusion as to the role of the guardian *ad litem* as delineated from that of the attorney for the ward.

Juv.R. 4(B)(5) states:

"Guardian ad litem; when appointed.

"The court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when:

"* * *

"(5) Any proceeding involves allegations of abuse or neglect, voluntary surrender of permanent custody, or termination of parental rights as soon as possible after the commencement of such proceeding."

Juv.R. 4(C) states:

"Guardian ad litem as counsel.

"(1) When the guardian ad litem is an attorney admitted to practice in this state, the guardian may also serve as counsel to the ward providing no conflict between the roles exist.

"(2) If a person is serving as guardian ad litem and as attorney for a ward and either that person or the court finds a conflict between the responsibilities of the role of attorney and that of guardian ad litem, the court shall appoint another person as guardian ad litem for the ward.

"(3) If a court appoints a person who is not an attorney admitted to practice in this state to be a guardian ad litem, the court may appoint an attorney admitted to practice in this state to serve as attorney for the guardian ad litem."

■ The issue presented is, When an attorney is appointed as guardian *ad litem* for a juvenile, does the attorney automatically become the attorney for the ward? We think not. The attorney may serve as attorney for the ward and guardian only when there is no conflict of interest, and who better to determine that issue but the court? Therefore, we find that for an attorney to act as

guardian *ad litem* and attorney for the ward, there must be a dual appointment, and a finding that no conflict exists. To hold otherwise would lead to obvious errors in the adjudicatory phase of the permanent custody hearing and the dispositional phase.

The role of the guardian *ad litem* is defined in R.C. 2151.414(C), which states in part:

"In making the determinations required by this section or division (A)(4) of Section 2151.353 of the Revised Code, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section, or Section 2151.35 of the Revised Code, *but shall not be submitted under oath.*" (Emphasis added.)

 The docket indicates that the guardian *ad litem* filed her report on May 16, 1994, and that the report was not under oath. Furthermore, at the hearing on May 5, 1994, the trial court adopted the filed report of the guardian *ad litem,* overruled the permanent custody complaint, and granted long-term foster care. After the reversal and remand, the trial court ordered all parties to submit proposed findings of fact and conclusions of law, and the guardian *ad litem,* together with counsel for the mother, filed findings of fact and conclusions of law. Subsequently, the attorney for the father filed findings of fact and conclusions of law, which in effect adopted that of the guardian *ad litem* and counsel for the mother. The findings of fact and conclusions of law were adopted by the court. The findings of fact and conclusions of law filed by the guardian *ad litem* and the counsel for the mother state that the report of the guardian *ad litem* submitted to the court in May 1994 was more than sufficient evidence to substantiate a granting of long-term foster care. Since we find that the guardian *ad litem* was not counsel for the ward, the guardian *ad litem* had no authority to file findings of fact and conclusions of law, and the court should not have ordered the guardian to do so. Assuming *arguendo* that this was harmless error, the findings of fact submitted by the guardian *ad litem* are based upon the investigative report that was not submitted under oath. Therefore, the report is pure hearsay. The guardian *ad litem* did not testify and was not subjected to direct or cross-examination, and therefore the report cannot be considered evidence.

 A permanent commitment hearing under R.C. 2151.414 is adjudicatory, and the reliance upon inadmissible hearsay evidence is prejudicial error. *In re Greene* (Nov. 17, 1992), Franklin App. No. 92AP–288, unreported, 1992 WL 341385.

If the court decides not to grant the motion for permanent custody, it appears that the matter remains under the auspices of R.C. 2151.415. In other words, it appears that where, upon hearing a motion requesting permanent custody of a child, the court decides to deny the motion, the court may then proceed in accordance with R.C. 2151.415 and make any disposition listed in that statute, including a placement of the child in long-term foster care. The unsworn report of the guardian *ad litem* is admissible at this time to aid the court in determining what is in the best interest of the child.

As stated above, we reversed and remanded this case for findings of fact and conclusions of law. We still do not have findings of fact and conclusions of law, as previously ordered. It is not appropriate for us to go behind our own order to determine from the evidentiary hearing whether or not there was sufficient evidence for the court to make the ruling that it made. Therefore, we find that we are in the same position that we were previously.

Assignments of Error I and III are sustained.

Therefore, we reverse and remand this case to the Stark County Court of Common Pleas, Juvenile Division, for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

WISE, J., concurs.

HOFFMAN, P.J., concurs in part and dissents in part.

WILLIAM B. HOFFMAN, Presiding Judge, concurring in part and dissenting in part.

I fully concur in the majority's disposition of appellant's second assignment of error. However, I respectfully dissent from the majority's analysis and decision to sustain appellant's first and third assignments of error.

The majority contends, "The issue presented is, When an attorney is appointed as guardian *ad litem* for a juvenile, does the attorney automatically become the attorney for the ward?" I do not find this issue to have been raised either in the trial court or in the appellant's assignments of error, or even mentioned as being a subissue anywhere in the appellant's brief. No one, including the trial court, has raised any objection to the guardian *ad litem* filing proposed findings of facts on behalf of the ward. Regardless of whether the guardian *ad litem* was separately appointed as attorney for the ward and thereby formally authorized to file proposed findings of facts, the trial court nevertheless adopted those proposed findings of facts as its own. It should not be forgotten that those findings were jointly filed with counsel for the appellee-mother. Once they were adopted

by the trial court, I find the question of who submitted the proposed fact findings to be of little, if any, significance, as long as they were duly considered and adopted by the trial court as its own and are supported by the evidence. Upon review of the record, I find there exists sufficient evidence to support the trial court's factual findings, and therefore the trial court's decision to deny appellant permanent custody and to order long-term foster care was neither against the manifest weight of the evidence nor error as a matter of law. Accordingly, I would affirm the decision of the trial court.

Though not necessary to my decision, I nevertheless feel compelled to address the issue deemed controlling by the majority. Though I share the view that there is "confusion as to the role of the guardian *ad litem* as delineated from that of the attorney for the ward," I do not share the majority's position that there must be a formalized dual appointment and a finding that no conflict exists before a guardian *ad litem* may also serve as attorney for the ward.

Juv.R. 4(C)(1) states that where the guardian *ad litem* is an attorney admitted to practice in this state, the guardian may also serve as counsel to the ward, provided that no conflict between the roles exists. It appears to be the common practice of the trial court to allow a guardian *ad litem* who is also an attorney to serve as counsel for the ward at various stages of the proceeding without a separate entry of appointment. I find that the trial court's acquiescence in (if not encouragement of) the guardian *ad litem*'s participation as attorney for the ward constitutes a de facto appointment. Should a conflict between the two roles become evident to either the guardian *ad litem* or the trial court at any stage, Juv.R. 4(C)(2) specifically provides for the appointment of a new guardian *ad litem*. Though I would concede that a formalized entry reflecting dual appointment might be the better approach, I do not find the de facto appointment procedure utilized by the trial court in the case *sub judice* to constitute error as a matter of law, let alone reversible error as found by the majority.

Under R.C. 2151.414, a hearing on a motion for permanent custody requires clear and convincing evidence that (1) it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion and (as applicable to the case *sub judice*) (2) the child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents. In a permanent custody hearing both elements must be adjudicated. If these two elements are found by the trial court, there is no separate dispositional hearing because the statute provides that if parental rights are terminated, permanent custody is granted to the agency that filed the motion. See, also, Juv.R. 2(1) (setting forth the definition of "adjudicatory hearing"). I find no requirement under R.C. 2151.414 comparable to that found in R.C. 2151.35(B)(1) which

requires separate adjudicatory and dispositional hearings in a case alleging a child to be abused, neglected or dependent. Should the trial court deny the motion for permanent custody, the trial court then proceeds to dispositional hearing under R.C. 2151.415, as noted by the majority.

One final note. Though I agree that the characterization of the guardian *ad litem's* report as evidence was improper, the report was nevertheless properly received by the trial court for consideration in making its determination of the permanent custody motion. The guardian's report is specifically required to be submitted prior to or at the time of the hearing on a motion for permanent custody pursuant to R.C. 2151.414(C).