DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant (and of each child's father) and awarded permanent custody of three of her minor children, Nikitia C., Cherish W. and Tacarra W., to appellee, Lucas County Children Services ("LCCS"). The court awarded legal custody of appellant's oldest child, Julius H., to his maternal grandmother. Because we conclude that the trial court failed to enter a finding that no conflict between the dual role of attorney for and guardian ad litem of the minor children exists, we reverse.
Appellant, Aleta C., has a history of involvement with LCCS; her children were removed from her care for long periods on two occasions prior to the inception of the instant cause. In October 1999, the children were again removed from the home based upon allegations that appellant was under the influence of drugs, that a drug dealer was residing in the home, that the children were present during a police "drug raid" and that the children's step-father sprayed insecticide in the eyes of Julius and Cherish. LCCS maintained that Julius, Nikitia, Cherish and Tacarra were dependent, neglected and/or abused children.
The juvenile court appointed Diane L. Youngston the children's counsel and guardian ad litem. Prior to the adjudicatory hearing, Attorney Youngston filed her written report and recommendation. She provided facts showing drug abuse on the part of the mother and her current husband, physical and sexual abuse of the children and the children's severe behavioral problems. Youngston's recommendation, at this point in time, reads:
 "I am very surprised that the Agency [LCCS] is not asking for permanent custody of these children because of the long history with this family. Mother at one point did her caseplan [sic], but she has not improved. She has not protected her children from abuse. She is still using drugs and allowing a pusher to live in her home.
 "The children are all attached to mother and want to be reunified with her. She needs counseling, extensive substance abuse treatment, and domestic violence treatment. If she does not show significant signs of progress immediately, I would urge the agency to go for permanent custody."
In January 2000, the trial court entered a judgment finding Julius, Nikitia, Cherish and Tacarra neglected children. Temporary custody of the three younger children was awarded to LCCS. Custody of Julius, with protective supervision by LCCS, was awarded to his natural father. Because his father could not control his son's severe behavior problems, Julius was later placed in the temporary custody of his grandmother.
LCCS developed case plans for appellant and her family. However, on October 10, 2000, LCCS filed a motion seeking the termination of appellant's parental rights. LCCS requested permanent custody of the three younger children and an award of legal custody of Julius to his grandmother. The agency asserted that appellant was still using drugs and had mental health issues. A dispositional hearing was scheduled.
In her report and recommendation as to disposition, Attorney Youngston noted that all four children have severe behavioral problems, especially Julius, who was committed to the Department of Youth Services for the crime of gross sexual imposition. The two girls, Cherish and Tacarra, were sexually abused by their father, one of their mother's boyfriends and their brother, Julius. According to Youngston, Nikitia, who resides in a therapeutic foster home, indicated that if his mother addressed her problems, he would like to go home. He added, nevertheless, that if she did not, he did not want to "go through it all again."
In her testimony, Tacarra's therapist stated that Tacarra loved her mother very much and that, even at the time of the dispositional hearing, Tacarra would prefer to "go home." Cherish's foster mother testified that Cherish was very upset when Aleta failed to exercise her visitation rights because the child "worried" about her mother. Cherish reacted to the possibility of the termination of her mother's parental rights by saying "at least I'll know where I'll be living."
As to appellant, the attorney/guardian ad litem noted that she had not been successful in completing substance abuse treatment, that she was not truthful about her relapses and that she recently tested positive for cocaine. Youngston was very upset about the fact that appellant's visits to her children were "sporadic," causing them to suffer when she failed to exercise her visitation rights. She "strongly" recommended that it would be in the best interests of the children to award permanent custody of Nikitia, Cherish and Tacarra to LCCS and legal custody of Julius to his grandmother.
On March 21, 2001, the juvenile court granted the motion for permanent custody. Appellant appeals and asserts the following assignment of error:
 "THE GUARDIAN AD LITEM, APPOINTED AS GUARDIAN AND ATTORNEY FOR THE CHILDREN, FAILED TO RECOGNIZE A CONFLICT BETWEEN THE CHILDREN, FAILED TO RECOGNIZE A CONFLICT BETWEEN THE CHILDRENS' [sic] BEST INTEREST AND THEIR WISHES, THEREBY VIOLATING THEIR DUE PROCESS RIGHTS."
Because the complaint in this case alleged the children were abused, the juvenile court was required to appoint an attorney to represent the interests of Julius, Nikitia, Cherish and Tacarra. Juv.R. 4(A). See, also, 2151.352. R.C. 2151.281(H) and Juv.R. 4(C)(1) provide that if the guardian ad litem for an alleged abused, neglected or dependent child is a licensed attorney in the state of Ohio, the court may also appoint the guardian ad litem to serve as counsel for that child. The roles of a guardian ad litem and an attorney are, however, different. In re BabyGirl Baxter (1985), 17 Ohio St.3d 229, 232. The role of a guardian adlitem is to investigate the child's situation and then ask the court to do what is in the child's best interest. In re Stacey S. (1999),136 Ohio App.3d 503, 514 (Citations omitted). An attorney's role is to zealously advocate the child's wishes within the bounds of the law. In reBaby Girl Baxter, 17 Ohio St.3d at 232. Thus, for an attorney to act in both capacities, a court must expressly make the dual appointment and enter a finding that no conflict exists. In re Stacey S.,136 Ohio App.3d at 514; In re Duncan/Walker Children (1996), 109 Ohio App.3d 841, 845.
In the present case, the court expressly appointed Attorney Youngston in a dual capacity — that of guardian ad litem and counsel for the children. The court never entered the requisite finding that there was no conflict between those two roles. In addition, there is some evidence in the record that, even at the dispositional phase, a conflict between the wishes of the children, who apparently still love their mother, and their best interests existed. Accordingly, appellant's sole assignment of error is found well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed, and this cause is remanded to that court for further proceedings consistent with this judgment.
Appellee is ordered to pay the costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _________________________________ Melvin L. Resnick, J.
Peter M. Handwork, J. and Richard W. Knepper, J. CONCUR.