JOURNAL ENTRY AND OPINION
{¶ 1} Appellant A.B.[1] ("Mother") appeals from a decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, which terminated her parental rights and granted permanent custody of her three children, J.B., A.P., and R.D. ("the children") to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the following reasons, we affirm.
 {¶ 2} The record supplied to us on appeal reveals the following: On October 30, 2001, CCDCFS removed J.B., six years old, A.P., eighteen months old, and R.P., two months old, from the custody of A.B. upon a complaint of neglect. Specifically, the complaint alleged that the children were often present during acts of domestic violence to the mother, that neither parent possessed the appropriate judgment and parenting skills necessary to provide adequate care for the children, and that the housing conditions were inadequate.
 {¶ 3} On April 15, 2002, all three children were adjudicated neglected and placed in the temporary custody of CCDCFS and placed with the same foster family where they had been living. A case plan was instituted at that time for purposes of pursuing reunification of the minor children with their mother.
 {¶ 4} On November 25, 2003, CCDCFS filed a motion seeking permanent custody of the children.
 {¶ 5} On August 4, 2004, the first of two dispositional hearings commenced. Testimony was first heard from CCDCFS social worker Carol Hutton. Ms. Hutton became involved with A.B. and the children in November 2001 after the children were removed from the custody of A.B. following an allegation of domestic violence between A.B. and the father of A.P. and R.P., which resulted in the children being left home alone and unsupervised. She developed a case plan for A.B., which included parenting skills, appropriate housing and employment, domestic violence classes, and a psychological evaluation.
 {¶ 6} In March 2003, A.B. substantially complied with her case plan requirements and was allowed overnight visits with the children in her home. However, during two of these visits, J.B. and R.P. were injured while under A.B.'s care and supervision. A.B. threw a magazine at J.B. causing injury to the child. On another occasion, A.B. left a curling iron unattended while watching television. R.P. burned his hand on the curling iron. A.B. assumed no responsibility for this injury, claiming she could not be expected to watch all three children at one time.
 {¶ 7} A.B. exhibited outbursts of anger and left meetings where CCDCFS was attempting to explore options to facilitate continued overnight visits. But, due to the above-described incidents and A.B.'s subsequent behavior and attitude, overnight visits were terminated and A.B. was referred for anger management classes, a psychological evaluation, and more parenting classes. Ms. Hutton admitted that the children interact well with A.B. and share a bond. She also testified that the children appeared to be doing well in their foster care placement.
 {¶ 8} Next, testimony was heard from parent education coordinator Minnie Marshall. She testified that A.B. completed a parenting education course in June 2002, but had not yet completed the re-referral program. She stated that she has concerns about A.B.'s anger management and communication skills.
 {¶ 9} Finally, A.B. testified on her own behalf. She admitted that she has schizophrenia and has been seeing a psychiatrist for the past ten months. She testified that she is currently taking medication to control her disease and does not hear voices or see things that are not there. She testified that she is living in a one-bedroom apartment but is trying to obtain housing with more bedrooms. She stated that she wants to get her children back and wants to have a relationship with them.
 {¶ 10} On September 29, 2004, the second and final dispositional hearing took place. During this hearing, the guardian ad litem for the children offered her oral recommendation, which recommended that the children be placed in the permanent custody of CCDCFS. The guardian ad litem's report commented that J.B. "perks up when talking about her mother and the possibility of living with her mother as a family" and that she "speaks positive of the mother and possibly living with her."
 {¶ 11} On October 21, 2004, the court granted permanent custody of the three children to CCDCFS. A.B. appeals from that decision and raises three assignments of error for our review, which we address together where appropriate for discussion.
 {¶ 12} "I. The trial court committed reversible error when it failed to appoint independent counsel to represent [A.B.'s] children.
 {¶ 13} "III. [A.B.] was denied her constitutional right to effective assistance of counsel."
 {¶ 14} A.B. claims reversible error for the reason that the trial court did not appoint independent representation for her children. Correspondingly, in the third assignment of error, A.B. maintains she received ineffective legal assistance because her counsel did not petition the court to appoint independent counsel for the children. These assignments of error are without merit.
 {¶ 15} Children who are the subject of a motion to terminate parental rights have a right to representation by counsel in that proceeding based on their status as parties to the proceeding. In re Williams,101 Ohio St.3d 398, 2004-Ohio-1500; see, also, Juv.R. 4(A) ("every party [to a juvenile court proceeding] shall have the right to be represented by counsel"); R.C. 2151.352 ("counsel must be provided for a child not represented by the child's parent, guardian, or custodian").
 {¶ 16} A juvenile court that appoints a guardian ad litem to serve the dual role of the child-party's attorney, need only appoint independent legal representation for the child where a conflict of interest develops between the guardian ad litem's recommended disposition and the juvenile's wishes.
 {¶ 17} "Where there is no conflict of interest, a child's guardian ad litem may act as counsel for the child. Juv.R. 4(C); R.C. 2151.281(H). * * * Where a conflict exists, as when the guardian's recommendation regarding permanent custody differs from the child's wishes, the guardian ad litem cannot serve as counsel and the court must appoint independent counsel to represent the child * * *." In re Williams, Geauga App. Nos. 2003-G-2498/2003-G2-499, 2003-Ohio-3550 (citations omitted), affirmed byIn re Williams, 101 Ohio St.3d 398, 2004-Ohio-1500.
 {¶ 18} In this case, the juvenile court appointed successive guardians ad litem to act as legal counsel for the children. There is no direct evidence in this record that the children's wishes conflicted with the recommendation of the guardian ad litem to grant permanent custody to CCDCFS.
 {¶ 19} At the time the children were removed from A.B.'s custody, they were aged two months, eighteen months, and six years. By the time of the custody proceedings, the three children were two, five and nine. There is no evidence concerning the two younger children's wishes concerning placement. Further, the weight of any conflicting wishes the two younger children might have expressed would have been tempered by their tender ages and limited maturity and ability to appreciate the impact and importance of such testimony.
 {¶ 20} While nine-year-olds are better able to articulate their wishes, the evidence does not reflect a conflict concerning the nine-year-old child's wishes concerning placement. The limited references from the guardian ad litem indicate that the oldest child "perks up when talking about her mother and the possibility of living with her mother as a family." This, however, does not translate into a preference by this child to live with her mother nor a conflict with the guardian ad litem's recommendation. Based on this record, the trial court did not err in permitting the guardian ad litem to serve the dual role as the children's legal counsel.
 {¶ 21} Assignment of Error I is overruled.
 {¶ 22} A.B.'s claim of ineffective assistance of counsel depends on her position that independent legal counsel was required for the children. The claim for ineffective assistance of counsel fails because the trial court was not required to appoint separate legal counsel for the children in this case.
 {¶ 23} To establish a claim of ineffective assistance of counsel, defendant must show two components: (1) "`that counsel's performance was deficient'"; and (2) "`* * * that the deficient performance prejudiced the defense.'" State v. Kole, 92 Ohio St.3d 303, 2001-Ohio-191, quotingStrickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674. However, appellate review of counsel's performance must be highly deferential. Id.
 {¶ 24} This Court has previously acknowledged that in order to show that his lawyer's conduct was unreasonable, appellant must overcome the presumption that he/she provided competent representation, and show that his/her actions were not trial strategies prompted by "reasonable professional judgment." State v. Freeman (Dec. 14, 2000), Cuyahoga App. No. 76906, citing Strickland, supra.
 {¶ 25} A.B. has failed to demonstrate that her counsel's performance was deficient or that the outcome of the trial would have been different had the attorney petitioned the court to appoint independent legal counsel for the children.
 {¶ 26} Assignment of Error III is overruled.
 {¶ 27} "II. The trial court committed reversible error by failing to discuss the best interest statutory factors and ascertain the wishes of the children under Ohio Revised Code Section 2151.414(D)."
 {¶ 28} In considering an award of permanent custody, the court must first determine whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody. R.C. 2151.414(D). In determining the best interest of the child during the permanent custody hearing, the court must consider the factors listed in R.C.2151.414(D), which include the reasonable probability the child will be adopted, the interaction of the child with the child's parents, siblings, and foster parents, the wishes of the child, the custodial history of the child,[2] and the child's need for a legal, secure, permanent placement.
 {¶ 29} The court must also determine whether the child can be placed with a parent within a reasonable time or should not be placed with the parent. R.C. 2151.414(B)(1)(a). The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply.
 {¶ 30} A.B.'s sole contention is that the trial court erred by not considering the wishes of the children as required by R.C. 2151.414(D)(2), thus warranting reversal. For the reasons that follow, we do not agree.
 {¶ 31} The record reveals that the three children were removed from A.B.'s custody when they were two months, eighteen months, and six years old. The two youngest children, aged two and five at time of trial, were very active and outgoing. The trial court noted A.B's lack of maturity and parenting skills necessary for raising a child. The trial court recognized A.B.'s sincere love for her children and desire to be reunited with them but concluded A.B. ultimately lacked an appreciation for the needs of her children. The trial court reasoned "it is their environment, consistent parenting, financial stability, age-appropriate parenting and behavior, nurturing, continued counseling, and supervision that have lead to their success and emotional stability while in placement." The children had been in the agency's custody for three years by the time of trial. The trial court concluded that A.B. could not provide secure placement for the children.
 {¶ 32} While the trial court must consider each of the R.C. 2151.414(D) factors, it need not discuss its consideration of each factor on the record. In re T.M., III, Cuyahoga App. No. 83933, 2004-Ohio-5222. A.B. did not request findings of fact and conclusions of law pursuant to R.C.2151.414(C). With respect to the wishes of the children, we have already noted the younger children's inability to articulate any meaningful expression of their wishes for placement. In the absence of evidence to the contrary, we presume the trial court considered the guardian ad litem's reports detailing the children's positive responses to A.B. and the possibility of living with her. Only one of the R.C. 2151.414(D) factors need be resolved in favor of the award of permanent custody.[3]
See In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942. There is clear and convincing evidence that supports the trial court's determination that permanent custody is in the best interest of the children.
 {¶ 33} Assignment of Error II is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas, Juvenile Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, J., concurs.
Cooney, J., concurs in judgment only.
[1] The parties are referred to herein by their initials or title in accordance with this Court's established policy.
[2] The children had been in agency custody since October 2001.
[3] In this case, R.C. 2151.414(D)(3) would apply.